UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**AMAAZZ CONSTRUCTION GROUP
LLC,** *et al.***,**

                **Plaintiffs,**                **Case No. 2:24-cv-1053**
                                                **Judge Edmund A. Sargus, Jr.**
        **v.**                          **Magistrate Judge Chelsey M. Vascura**

**CMI ROADBUILDING, INC.,**

                **Defendant.**

## <u>OPINION AND ORDER</u>

This matter is before the Court on Defendant CMI Roadbuilding, Inc. ("CMI")'s Motion to Dismiss the First Amended Complaint. (ECF No. 20.) For the reasons stated below, the Court **DENIES** CMI's Motion.

## BACKGROUND

Plaintiffs Amaazz Construction Group, LLC ("ACG") and Amaazz Construction Ohio, LLC ("ACO"), ACG's wholly owned subsidiary, (together, "Amaazz Parties") are headquartered in Franklin County, Ohio. (Am. Compl., ECF No. 19, ¶¶ 14–15.) ACO is a construction company that focuses on commercial and municipal asphalt paving projects. (*Id.* ¶ 2.)

CMI is a heavy equipment manufacturing company that has its principal place of business in Oklahoma City, Oklahoma. (*Id.* ¶¶ 3, 16.) It manufactures a mobile asphalt processing machine called the "CMI Magnum 250 Super Portable 250tph [tons per hour] counterflow drum-mix" ("Mobile Asphalt Plant" or "Plant"). (*Id.* ¶ 1.) The Plant's mobile design allows construction companies to reduce the costs of manufacturing and transporting asphalt by bringing the plant with them from build site to build site. (*See id.* ¶¶ 1–3.) CMI advertised that the Mobile Asphalt Plant

could be assembled in two days at any build site, produce 250 tons of asphalt per hour, and be used at build sites with "minimal foundations." (*Id.* ¶¶ 3–4.) Amaazz Parties contacted CMI about purchasing a Mobile Asphalt Plant, and CMI's head of sales repeated these marketing points to Amaazz Parties. (*Id.* ¶ 24.)

On March 16, 2020, Amaazz Parties entered an Agreement with CMI to buy a Mobile Asphalt Plant. (Agreement, ECF No. 19-1.) The Agreement is addressed to "Amaazz Construction" in Dublin, Ohio, includes CMI's logo on the first page, and identifies the "Buyer" as "Amaazz Construction." (*Id.* PageID 221.) On the "Buyer" signature line, an illegible signature is provided next to the title "Vice President." (*Id.* PageID 222.) The Agreement sets out the terms of the sale, including a list of 37 parts CMI promised to deliver to Amaazz Parties. (Am. Compl., ¶ 24.) The final purchase price was $2,650,000. (*Id.* ¶ 5.)

Amaazz Parties and CMI further agreed that the Plant would be delivered to ACO's first build site in the summer of 2020, with the exact delivery date to be determined once Amaazz Parties secured financing and CMI had completed construction. (*Id.*) Amaazz Parties secured financing and CMI completed construction in summer of 2020. (*Id.* ¶ 26.) Amaazz Parties paid the full balance owed to CMI, and the Parties agreed that the Plant would be delivered to an ACO build site in Waverly, Ohio. (*Id.*) Based on its expectations about the Plant's production capabilities and delivery time frame, Amaazz Parties bid on and won contracts for over $25 million of work for 2020 and anticipated a pipeline of work exceeding $30 million for 2021. (*Id.* ¶ 25.)

A first shipment of parts arrived in July 2020, but the shipment did not include all parts necessary to make the machine operational. (*Id.* ¶¶ 8, 27.) Other critical components arrived over two weeks later, but "many of the parts . . . were delivered damaged or were incompatible with other parts delivered." (*Id.* ¶ 29.) Amaazz Parties allege that operation manuals and certain

components promised in the Agreement were never delivered. (*Id.* ¶ 33.) CMI sent a technician to the Waverly site to help assemble the Plant. (*Id.* ¶ 31.) The technician stayed at the site for more than forty days, fixing parts and building others "entirely from scratch components." (*Id.* ¶ 33.) CMI told Amaazz Parties that the Plant's problems stemmed from an unsuitable foundation rather than the broken and missing parts. (*Id.* ¶ 32.)

The Mobile Asphalt Plant became operational in October 2020. (*Id.* ¶ 38.) Even then, Amaazz Parties allege, the Plant could not produce 250 tons of asphalt per hour as advertised. (*Id.* ¶ 43.) In September 2020, before the Plant was operational, CMI demanded Amaazz Parties pay the tax due on the sale of the Plant, which was less than $200,000. (*Id.* ¶ 46.) Amaazz Parties refused to pay. (*Id.* ¶ 47.)

In the four months leading up to the Plant becoming operational in October 2020, Amaazz Parties' owners infused ACG and ACO with personal funds and millions of dollars in loans. (*Id.* ¶ 39.) Amaazz Parties purchased asphalt required to complete projects from other asphalt plants, far exceeding expected costs. (*Id.* ¶ 40.) But Amaazz Parties could not keep pace with the contracts they had won, and they defaulted on its remaining pipeline of work for 2020. (*Id.* ¶ 44.) ACO reported a loss of $13 million for 2020. (*Id.* ¶ 45.)

Based on internal CMI correspondence, Amaazz Parties allege CMI "was well aware that it was shipping [Amaazz Parties] broken and unusable parts." (*Id.* ¶¶ 30, 33.) Amaazz Parties allege the contents of several internal emails between CMI employees in July and August 2020, including the employees' discussions of missing, defective, and incompatible parts shipped to Amaazz. (*Id.* ¶ 33.) In a September 25, 2020 email to CMI employees, CMI's general manager stated, "it may be wise to look at your quality of workmanship" on future projects because "[w]e have some issue[s] on the Keywest [and] Amaazz plants that we probably should have found." (*Id.*

¶ 36.) He then listed twelve problems, including missing, damaged, or incompatible parts. (*Id.*)

Amaazz Parties bring six claims against CMI, all asserted by both ACG and ACO: (1) fraudulent inducement, (2) breach of contract, (3) breach of express warranties, (4) breach of implied warranties, (5) unjust enrichment, and (6) promissory estoppel. (*See* Am. Compl.) CMI moved to dismiss all claims for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Mot.) Amaazz Parties responded in opposition to the Motion. (Resp., ECF No. 30.) CMI replied. (Reply, ECF No. 31.)

## LEGAL STANDARD

To state a claim upon which relief may be granted, a plaintiff must satisfy the pleading requirements set forth in Rule 8(a), which requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Accordingly, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (clarifying the plausibility standard from *Twombly*, 550 U.S. at 556). Furthermore, "[a]lthough for purposes of a motion to dismiss [a court] must take all the factual allegations in the complaint as true, '[the court is] not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555) (internal quotations omitted).

## ANALYSIS

CMI first argues that ACO is not in privity of contract with CMI and thus lacks standing to bring a breach of contract claim against it. (Mot., PageID 290.) CMI also extends its privity

argument to all Amaazz Parties' other claims, supplemented by related arguments about ACO's standing. (*Id.* PageID 290–97.) Additionally, CMI argues Amaazz Parties' claims are improperly pled as a "group pleading" and that the claims lack facial plausibility on other grounds. (*Id.* PageID 298–318.) The Court first addresses ACO's status as a contracting party and the issue of standing regarding the breach of contract claim.

### I. Breach of Contract

#### a. ACO's Standing

Amaazz Parties bring their breach of contract claim on behalf of both ACG and ACO against CMI. (Am. Compl., ¶¶ 1, 56–59.) As alleged, both ACG and ACO "entered into the Agreement" to buy the Mobile Asphalt Plant and "are parties to the Agreement" with CMI. (*Id.* ¶¶ 24, 57.) CMI argues the Agreement "directly contradicts any allegation that ACO is a party to the contract" and that the Court therefore need not accept as true Amaazz Parties' allegations about ACO's status as a contracting party. (Mot., PageID 290 (citing *Mulbarger v. Royal All. Assocs., Inc.*, 10 F. App'x 333, 335 (6th Cir. 2001) ("A court is not bound to accept either (1) unwarranted inferences, including allegedly inferable 'facts' or conclusions which contradict documentary evidence appended to, or referenced within, the plaintiff's complaint; or (2) alleged legal conclusions.")).) Amaazz Parties argue that the Agreement is ambiguous as to whether ACG, ACO, or both companies are the Buyer. (Resp., 376.) The Court agrees with Amaazz Parties.

"Generally, a contract is only binding on those who are parties to it. A party cannot sue for performance or breach of a contract to which he is not a party or privy." *Asia-Pac. Futures Rsch. Symp. Plan. Comm. v. Kent State Univ.*, 63 N.E.3d 780, 785 (11th Dist. Ohio Ct. App. 2016) (quotation and citation omitted). "Under Ohio law, the interpretation of written contract terms, including the determination of whether those terms are ambiguous, is a matter of law for initial

determination by the court." *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 763 (6th Cir. 2008) (citing *Parrett v. Am. Ship Bldg. Co.*, 990 F.2d 854, 858 (6th Cir. 1993) (applying Ohio law)). "Contractual language is ambiguous 'only where its meaning cannot be determined from the four corners of the agreement or where the language is susceptible of two or more reasonable interpretations.'" *Id.* (quoting *Covington v. Lucia*, 784 N.E.2d 186, 190 (10th Dist. Ohio Ct. App. 2003)). "If the language in the contract is ambiguous, the court should generally construe it against the drafter." *Id.* (citing *Cent. Realty Co. v. Clutter*, 406 N.E.2d 515, 517 (Ohio 1980)).

The Agreement does not contradict Amaazz Parties' statements or conclusively demonstrate that ACO is not a party to the Agreement. The Agreement is unambiguous that "Amaazz Construction," located in Dublin, Ohio, is the "Buyer." (Agreement, PageID 221.) It is ambiguous, however, regarding whether "Amaazz Construction" refers to ACG, its subsidiary ACO, or both entities. The Agreement is addressed as a letter to "Amaazz Construction," bears the CMI Roadbuilding logo on the first page, and states that "CMI Roadbuilding Inc. is pleased to provide our contract for one [Mobile Asphalt Plant.]" (*Id.* PageID 221.) CMI is thus the drafter of the Agreement, and the ambiguity is construed against CMI.

Even without construing the ambiguity against CMI, the Agreement is ambiguous enough at this stage to reject CMI's Motion to Dismiss as to ACO's claims on the ground that ACO does not have standing to sue CMI for breach of contract under the Agreement. The Court accepts as true that, as alleged, both ACG and ACO contracted with CMI as the "Buyer" of the Mobile Asphalt Plant and that both entities secured financing for the purchase. (Am. Compl., ¶¶ 1, 24, 26, 57.) Given the Agreement's ambiguity as to whether ACG, ACO, or both entities are a party to the contract, those alleged facts are enough to demonstrate contractual standing for both ACG and ACO at this stage.

6

Amaazz Parties suggest that ACO may be the actual contracting entity while its parent company, ACG, could be treated as a third-party beneficiary under Ohio law. (Resp., PageID 378–79.) The Court need not reach that argument given the above conclusion, but that possibility remains for determination at the summary judgment stage.

Accordingly, the Court concludes, for the purpose of this Motion only, that both ACG and ACO are parties to the contract with CMI and have standing to sue for breach of contract.

### b. "Group Pleading"

Next, CMI argues Amaazz Parties' contract claim is insufficient under Rule 8(a) of the Federal Rules of Civil Procedure "because it is unclear whether ACO's claims arise from some unspecified oral agreement with CMI, or the Sales Agreement executed between CMI and ACG." (Mot., PageID 301–02.) But as the Court concludes above, for the purpose of CMI's Motion, both ACG and ACO are in privity of contract with CMI under the Agreement, assuming it is an enforceable contract. The Amended Complaint sufficiently states the nature of the breach of contract claim, the entities involved, and the relief sought. Amaazz Parties' claim that both ACG and ACO are entitled to relief for breach of contract does not obfuscate the nature of the claims such that CMI could not adequately defend against them.

### c. Sufficiency of the Breach of Contract Claim

"Under Ohio law, the elements of a breach of contract claim are: (1) the existence of a contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damage or loss to the plaintiff as a result of the breach." *V&M Star Steel v. Centimark Corp.*, 678 F.3d 459, 465 (6th Cir. 2012). Amaazz Parties have sufficiently pled the existence of a contract and performance of Amaazz's obligations under the Agreement. They claim CMI breached the Agreement by failing to timely deliver the Mobile Asphalt Plant, failing to deliver it in functioning condition, and failure

7

to deliver accompanying manuals. (Am. Compl., ¶ 58.) CMI argues that facts pled in the Amended Complaint contradict Amaazz Parties' argument that CMI breached its obligations under the Agreement. (Mot., PageID 315.)

As pled, CMI needed to deliver the Mobile Asphalt Plant "to ACO's first build site in the summer of 2020," with an exact delivery date to be determined after Amaazz Parties secured financing and after CMI had completed construction. (Am. Compl., ¶ 24.) Amaazz Parties also allege that "[b]ased on CMI's representations about the timing of the delivery of the Mobile Asphalt Plant and CMI's representations that once delivered the Mobile Asphalt Plant could be assembled in just two days," ACO had anticipated starting operation of the machine by late July. (*Id.* ¶ 28.) But with critical parts arriving at different times and with some arriving defective, requiring on-site repairs and troubleshooting by a CMI employee, the Plant was not "operational" until October 2020. (*Id.* ¶¶ 27–38.)

Amaazz Parties' allegations that the Plant was delivered piecemeal, with variously broken and missing parts, and that it was not operational until months after the expected delivery date, are enough to raise an inference that CMI breached its obligations under the Agreement. Amaazz Parties also sufficiently allege that the breach caused them to suffer damages because they were unable to perform on contracts they had formed relying on having a functional Mobile Asphalt Plant delivered in summer 2020. (*Id.* ¶¶ 39–46.)

Amaazz Parties' breach of contract claim is sufficiently pled at this stage as to both ACG and ACO.

## II.    Fraudulent Inducement

Under their fraudulent inducement claim, Amaazz Parties allege that CMI made the following material, false representations to ACG and ACO about the capabilities of the Plant:

> (1) that it could be assembled in two days, (2) that the Mobile Asphalt Plant was capable of being used on build sites with "minimal foundations," (3) that the Mobile Asphalt Plant was capable of "rapid set up time," and (4) that the Mobile Asphalt Plant was capable of producing 250 tons of asphalt per hour. CMI further falsely represented that the Mobile Asphalt Plant would be delivered in working condition, requiring only assembly per the instructions, which would also be provided.

(Am. Compl., ¶ 50.)

"Fraud in the inducement arises when a party is induced to enter an agreement based on a misrepresentation." *Matter of Est. of McDaniel*, 212 N.E.3d 351, 368 (7th Dist. Ohio Ct. App. 2023). "The fraud or misrepresentation must be made with the intent of inducing the party's reliance." *Id.* All six elements of common law fraud must be proven under a fraud-in-the-inducement theory. *Id.* Those elements are:

> [1] a representation or, where there is a duty to disclose, concealment of a fact, [2] which is material to the transaction at hand, [3] made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, [4] with the intent of misleading another into relying upon it, [5] justifiable reliance upon the representation or concealment, and [6] a resulting injury proximately caused by the reliance.

*Williams v. Aetna Fin. Co.*, 700 N.E.2d 859, 868 (Ohio 1998) (citations omitted) (cleaned up).

Because Amaazz Parties are claiming fraud, the claim is subject to the heightened pleading standards of Rule 9(b) of the Federal Rules of Civil Procedure. *See Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 247 (6th Cir. 2012) (applying Rule 9(b) to state common law fraud claims). Rule 9(b) requires a plaintiff claiming fraud: "(1) to specify the allegedly fraudulent statements; (2) to identify the speaker; (3) to plead when and where the statements were made; and (4) to explain what made the statements fraudulent." *Id.* Additionally, "[a]lthough 'conditions of a person's mind may be alleged generally,' Fed. R. Civ. P. 9(b), the plaintiff still must plead facts about the defendant's mental state, which, accepted as true, make the state-of-mind allegation 'plausible on its face.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted)).

9

### a. ACO's Status and Relation to Contract Claim

CMI first argues that the Court should dismiss the fraud claim as to ACO because ACO was not a party to the contract. (Mot., PageID 293.) For the same reasons stated above regarding ACO's standing to bring a breach of contract claim, this argument fails.

Next, CMI argues that the fraud claim fails because it is duplicative of Amaazz Parties' breach of contract claim. (Mot., PageID 304.) Under Ohio law, "the existence of a contract action generally excludes the opportunity to present the same case as a tort claim." *Pham Constr. & Co., LLC v. Tran*, 236 N.E.3d 849, 857 (Ohio Ct. App. 2024). In other words, "[a] tort claim based upon the same actions as those upon which a claim of contract breach is based will exist independently of the contract action only if the breaching party also breaches a duty owed separately from that created by the contract, that is, a duty owed even if no contract existed." *Textron Fin. Corp. v. Nationwide Mut. Ins.*, 684 N.E.2d 1261, 1270 (Ohio Ct. App. 1996).

Amaazz Parties plead the fraudulent inducement claim in the alternative to the breach of contract claim. (Resp., PageID 385.) In other words, if the breach of contract claim fails because the Agreement is invalid as to one or more parties, or for another reason, Amaazz Parties seek to recover under a theory of fraud instead. Such a posture is permissible as the pleadings stage. *See MAB Indus. Corp. v. Channingway Ctr. LLC*, No. 2:23-CV-3083, 2024 WL 987313, at *7 (S.D. Ohio Mar. 7, 2024) (Watson, J.) (collecting cases and holding that, because the Court could not determine whether there was an enforceable contract, "[p]laintiff may plead breach-of-contract along with, in the alternative, fraudulent inducement and unjust enrichment"). As stated above, the Court assumes, without deciding, that the Agreement is enforceable both regarding ACG and ACO. Because the enforceability of the Agreement remains to be determined, Amaazz Parties may proceed with their alternative fraudulent inducement claim.

### b. Sufficiency of Fraudulent Inducement Claim

CMI also argues the fraud claim fails under the heightened pleading standard of Rule 9(b) because Amaazz Parties do not specify to what parties CMI made the allegedly false representations and because Amaazz Parties do not allege any knowingly false representations. (Mot., PageID 298–301, 311.)

Amaazz Parties allege that CMI made its allegedly fraudulent representations to both ACG and ACO. (Am. Compl., ¶ 50.) The Amended Complaint states that both ACG and ACO contracted with CMI to buy to the Mobile Asphalt Plant, that they did so in justifiable reliance on CMI's statements that were knowingly false, and that both ACG and ACO suffered damages a result. Just because CMI made the statements to two parties, allegedly causing both of them to enter a contract with CMI, does not mean the statements were not fraudulent.

Additionally, Amaazz Parties allege facts sufficient to raise an inference of fraudulent scienter. They allege the contents of several internal CMI emails revealing that over several months, CMI shipped incorrect parts, did not ship required parts, and shipped malfunctioning or otherwise defective parts. (Am. Compl., ¶¶ 33–34.) These emails suggest systemic problems with the Plant. It is reasonable to infer that, at the time CMI sold the Mobile Asphalt Plant to Amaazz Parties, CMI knew or consciously disregarded that its representations of a "market leading set up time within 2 days" were false. (*Id.* ¶¶ 3–5, 21, 50.) At this early stage in the proceedings, that reasonable inference is enough for the claim to continue.

As the Court explained above, though, under Ohio law, a fraudulent inducement claim typically is not actionable alongside a breach of contract claim about an enforceable contract. But because the Court has not yet determined the enforceability of the Agreement as to all parties, the fraud claim is not precluded at this stage.

### III.    Breach of Express and Implied Warranties

As with its fraud claim, CMI argues ACO cannot pursue a breach of express or implied warranties claim because ACO did not contract with CMI to buy the Mobile Asphalt Plant. (Mot., PageID 294.) It also argues for dismissal because the warranties were "integrated, clarified, and disclaimed" in the Agreement. (*Id.* PageID 313.) These arguments fail for the same reasons stated above regarding the fraud claim—the Court has not yet determined whether the Agreement is enforceable as to all parties. And as with the fraud claim, Amaazz Parties may pursue the breach of warranties claims in the alternative at this stage.

CMI also argues Amaazz Parties fail to state a claim for breach of implied warranties. (Mot., PageID 316.) Under that claim, Amaazz Parties state that the Mobile Asphalt Plant and its supplemental parts "were not fit for the ordinary purpose for which" they are used and that the Plant did not conform to promises made by CMI and to CMI's descriptions and labels of the Plant. (Am. Compl., ¶¶ 71–72.) CMI contends that Amaazz Parties fail to allege that machine could not produce asphalt or move from site to site and that their only true complaint is that the machine was delayed in becoming operational. (Mot., PageID 316.)

Under Ohio law, "[a] tort claim for breach of implied warranty 'is a common law cause of action that imposes liability upon a manufacturer or a seller for breach of an implied representation that a product is of good and merchantable quality, fit and safe for its ordinary intended use.'" *Wotring Towing v. Ford Motor Co.*, No. 2:16-CV-1193, 2017 WL 2378003, at *3 (S.D. Ohio May 31, 2017) (quoting *Risner v. Regal Marine Indus., Inc.*, 8 F. Supp. 3d 959, 995 (S.D. Ohio 2014) (Litkovitz, M.J.)). "The elements of a tort claim for breach of implied warranty are (1) that a defect existed in a defendant's product which made it unfit for its ordinary, intended use, (2) that the defect existed at the time the product left the defendant's possession, and (3) that the defect was

the proximate cause of the plaintiff's injuries." *Id.*

Amaazz Parties have plausibly alleged that the Mobile Asphalt Unit left CMI's possession with several defects rendering it unfit for its intended purpose—in part, to be fully operational within just two days of delivery and to be mobile from site-to-site after that. They allege proximate cause by stating that they entered contracts based on CMI's representations and were unable to perform them because of these defects. Taking the alleged facts as true, Amaazz Parties raise a plausible inference that CMI implied a warranty that the Plant would be delivered together, or within a narrow window of time, and that it would be operational within two days after delivery of the first parts.

At this stage, these facts are enough to state a plausible claim for breach of implied warranties. CMI does not otherwise challenge the express warranty claim, so that claim survives as well.

## IV.    Unjust Enrichment and Promissory Estoppel

CMI argues that the unjust enrichment and promissory estoppel claims are precluded by Amaazz Parties' breach of contract claim. (Mot., PageID 317–18.) As with the other alternative claims, Amaazz Parties may pursue the unjust enrichment and promissory estoppel claims in the alternative. Additionally, CMI argues that these claims fail because the Amended Complaint states that the Mobile Asphalt Plant was eventually operational. (Mot., PageID 317.) For the same reasons stated above regarding the warranty claims, Amaazz Parties have adequately alleged that CMI failed to fulfill its promises to timely and completely deliver an operational machine as advertised.

## CONCLUSION

For the reasons stated in this Opinion and Order, the Court **DENIES** CMI's Motion to

Dismiss the First Amended Complaint. (ECF No. 20.)

 This case remains open.

 **IT IS SO ORDERED.**

**<ins>3/29/2025</ins>**        **<ins>s/Edmund A. Sargus, Jr.</ins>**
**DATE**            **EDMUND A. SARGUS, JR.**
              **UNITED STATES DISTRICT JUDGE**